# Commonwealth of Massachusetts

SUFFOLK, $S.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO.

2084CV01158

Paschal Nwagu and Stella Nwagu

_____, PLAINTIFF(S),

v.

Anika Moore, M.D., Cassandra Etienne, CNM, Rachel Perakslis, RN, Lucy Bayer-Zwirello, MD,
Anna Keshishyan, CNM, _____, DEFENDANT(S)
Katrina Doherty, RN (fka Katrina Martin, BSN) Luisa Berganzi, RN,  **SUMMONS**
Steward Good Samaritan Medical Center, Inc.
and Steward St. Elizabeth's Medical Center of Boston, Inc
THIS SUMMONS IS DIRECTED TO

Anika Moore, MD _____. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the _____ Suffolk Superior _____ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide
    the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
    opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect
    to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an
    extension of time in writing from the Court.**

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and mail a
    copy** to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

    a.  Filing your **signed original response** with the Clerk's Office for Civil Business, _____ Court,
        3 Pemberton St., Boston 02108 (address), by mail or in person, **AND** _____ Suffolk Sup.

    b.  Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following
        address: _____ Mitchell & DeSimone, 101 Arch St., Boston MA 02110

3.  **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer
    must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
    Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
    use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
    based on the same facts or transaction described in the Complaint, then you must include those claims
    in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
    lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
    Answer or in a written demand for a jury trial that you must send to the other side and file with the
    court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a
    **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion
    to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If
    you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
    described in the rules of the Court in which the complaint was filed, available at
    www.mass.gov.courts/case-legal-res/rules of court.

**A TRUE COPY, ATTEST**

DeCive   6/24/20

**DEPUTY SHERIFF**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

|  |  |
|---|---|
| PASCHAL NWAGU, as Personal Representative of the ESTATE of JOSEPH NWAGU and Individually, and STELLA NWAGU, <br>      Plaintiffs <br><br> v. <br><br> ANIKA MOORE, M.D., <br> CASSANDRA ETIENNE, C.N.M., <br> RACHEL PERAKSLIS, R.N., <br> LUCY BAYER-ZWIRELLO, M.D., <br> ANNA KESHISHYAN, C.N.M., <br> KATRINA DOHERTY, R.N. (formerly known as KATRINA MARTIN, B.S.N.), <br> LUISA BORGONZI, R.N., <br> STEWARD GOOD SAMARITAN MEDICAL CENTER, INC., and <br> STEWARD ST. ELIZABETH'S MEDICAL CENTER OF BOSTON, INC., <br>      Defendants | SUPERIOR COURT DEPARTMENT <br> CIVIL ACTION NO. 2084CV01158 |

## FIRST AMENDED COMPLAINT AND JURY CLAIM

### Parties

1. The plaintiff, Paschal Nwagu, the Personal Representative of the Estate of Joseph Nwagu, is an individual residing at 25 Eagle Avenue, Apt. 12, Brockton, Plymouth County, Massachusetts.

2. The plaintiff, Stella Nwagu, is an individual residing at 25 Eagle Avenue, Apt. 12, Brockton, Plymouth County, Massachusetts.

3. The defendant, Anika Moore, M.D., is an individual with places of business at Steward Good Samaritan Medical Center, 235 North Pearl Street, Brockton, Plymouth County, Massachusetts and Brockton Neighborhood Health Center, 63 Main Street, Brockton, Plymouth County, Massachusetts.

4. The defendant, Cassandra Etienne, C.N.M., is an individual with places of business at Steward Good Samaritan Medical Center, 235 North Pearl Street, Brockton, Plymouth County, Massachusetts and Brockton Neighborhood Health Center, 63 Main Street, Brockton, Plymouth County, Massachusetts.

1

5. The defendant, Rachel Perakslis, R.N., is an individual with a place of business at Steward Good Samaritan Medical Center, 235 North Pearl Street, Brockton, Plymouth County, Massachusetts.

6. The defendant, Lucy Bayer-Zwirello, M.D., is an individual with a place of business at Steward St. Elizabeth's Medical Center, 736 Cambridge Street, Brighton, Suffolk County, Massachusetts.

7. The defendant, Anna Keshishyan, C.N.M., is an individual with a place of business at Steward St. Elizabeth's Medical Center, 736 Cambridge Street, Brighton, Suffolk County, Massachusetts.

8. The defendant, Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.), is an individual with a place of business at Steward St. Elizabeth's Medical Center, 736 Cambridge Street, Brighton, Suffolk County, Massachusetts.

9. The defendant, Luisa Borgonzi, R.N., is an individual with a place of business at Steward St. Elizabeth's Medical Center, 736 Cambridge Street, Brighton, Suffolk County, Massachusetts.

10. The defendant, Steward Good Samaritan Medical Center, Inc. (Steward Good Samaritan Medical Center), is a foreign for-profit corporation with a place of business at 235 North Pearl Street, Brockton, Plymouth County, Massachusetts.

11. The defendant, Steward St. Elizabeth's Medical Center of Boston, Inc. (Steward St. Elizabeth's Medical Center), is a foreign for-profit corporation with a place of business at 736 Cambridge Street, Brighton, Suffolk County, Massachusetts.

## Facts

12. From March of 2018 through early August of 2018, Ana Sofia DeBrito, C.N.M., of Brockton Neighborhood Health Center, as the primary midwife, provided prenatal care to Stella Nwagu.

13. In March 2018, Ms. Nwagu was seen at Brockton Neighborhood Health Center with "some pains with sudden movement." Midwife DeBrito noted that Ms. Nwagu had a history of caesarian section in August 2017. Despite Ms. Nwagu's complaints of pain of unknown cause, she was noted to have a "normal pregnancy."

14. On July 12, 2018, Ms. Nwagu was seen at Brockton Neighborhood Health Center with "the same constant pain over [the] caesarian scar as [the] uterus stretche[d]" and new concerns about "round ligament pain with movement." The pain was rated at 5/10. No inquiry into the cause of the pain was made.

15. On July 27, 2018, Ms. Nwagu's delivery record from Nigeria was received by Brockton Neighborhood Health Center. Ms. Nwagu was noted to have had a low transverse caesarian section for partial placental abruption in August 2017. It was noted that Ms. Nwagu was presently "doing well" and there were "no concerns."

2

16.  On August 10, 2018, Ms. Nwagu was seen at Brockton Neighborhood Health Center with "pelvic pain" rated at 5/10.  No inquiry into the cause of the pain was made.

17.  On August 15, 2018, around 12:00-12:15 a.m., Ms. Nwagu, age 32, gestational age 31 weeks and 4 days, was admitted to Steward Good Samaritan Medical Center with painful contractions since the morning of August 14, 2018.  Her contractions were initially associated with mild pain, but the pain became intense and contractions were occurring with increased frequency by 11 p.m. on August 14, 2018.  On arrival, Ms. Nwagu was "breathing heavily with contractions" and reported severe abdominal pain and "the urge to push."

18.  The defendant, Cassandra Etienne, C.N.M., was called to the room because it was thought that Ms. Nwagu was "about to deliver."  At 12:16 a.m., Ms. Nwagu reported abdominal pain rated at 8/10.  Midwife Etienne ordered Terbutaline for delaying preterm labor, Morphine 5 mg IV, Phenergan 25 mg IV, and IVF bolus.  At 12:17 a.m., a bedside ultrasound showed transverse fetal presentation.

19.  At 1:58 a.m., Midwife Etienne was informed that Ms. Nwagu received a second dose of Terbutaline at 1:32 a.m. but continued to have contractions every 3-6 minutes, was "very uncomfortable" during contractions, and Morphine did not relieve her pain.  Midwife Etienne ordered the third dose of Terbutaline and also ordered Betamethasone.  Midwife Etienne spoke with the defendant, Anika Moore, M.D., a Steward Good Samaritan Medical Center, Inc. agent and/or employee acting as the attending/on-call physician, who merely recommended a maternal-fetal medicine consult.  A call for a maternal-fetal medicine consult was made and there was no response for an hour.  At 3:00 a.m., Midwife Etienne spoke with the defendant, Lucy Bayer-Zwirello, M.D.  At 3:09 a.m., Midwife Etienne ordered Magnesium per Dr. Bayer-Zwirello's recommendation.

20.  At 3:22 a.m., Ms. Nwagu was evaluated by Midwife Etienne for "preterm labor." Midwife Etienne noted that Terbutaline, IVF, and Morphine had been administered with minimal effect.  Midwife Etienne also noted that Ms. Nwagu had a history of a caesarian section in 2017 at 42 weeks for "FTP" (failure to progress in labor) in Nigeria and that her primary midwife was Midwife DeBrito with whom 7 visits had been recorded.  There is no indication in the medical records that Midwife Etienne was aware of Ms. Nwagu's prior placental abruption although Brockton Neighborhood Health Center had "received her delivery record from Nigeria" containing this information.  The fetal heart rate was 155 with moderate variability and variable decelerations.  Midwife Etienne deemed the fetal heart rate to be Category I although variable decelerations were indicative of Category II.  Midwife Etienne assessed Ms. Nwagu with "preterm uterine contractions." There is no indication in the medical records that Midwife Etienne considered Ms. Nwagu's risk of uterine rupture or recurrent placental abruption.

21.  The fetal heart rate was checked by the defendant, Rachel Perakslis, R.N., approximately every 15-30 minutes from 12:27 a.m. to 4 a.m.  Nurse Perakslis noted "difficulty tracing contractions."  The tocometer was "adjusted multiple times."  From approximately 1 a.m. to 4 a.m., Nurse Perakslis deemed the fetal heart rate to be Category II on 6 out of 9 checks and deemed it to be Category II on the last check at 4 a.m.  During the 3 ½ hours

of fetal heart rate monitoring from approximately 12:30 a.m. to 4 a.m., Midwife Etienne reviewed fetal heart rate tracings only at 2:30 a.m. and 3:22 a.m. when the fetal heart rate was Category II and the only action taken in response was tocometer adjustment.

22.   At 4:30 a.m., Ms. Nwagu left Steward Good Samaritan Medical Center in an ambulance, with Magnesium infusing, and was transported to Steward St. Elizabeth's Medical Center.

23.   At 5:15 a.m., Ms. Nwagu was admitted to Steward St. Elizabeth's Medical Center with painful uterine contractions occurring every 3-5 minutes and unchanged in intensity. It was noted that the contractions had been occurring since the mid-day of August 14, 2018. On admission, her abdominal pain was rated at 6/10.

24.   At 6:22 a.m., approximately an hour after admission, Ms. Nwagu was evaluated by the defendant, Lucy Bayer-Zwirello, M.D., and the defendant, Anna Keshishyan, C.N.M., who noted Ms. Nwagu's history of a prior caesarian section for placental abruption in 2017 with two-layer uterine closure. Dr. Bayer-Zwirello observed that Ms. Nwagu was in "mild distress" and there were "no other abnormal findings." Although Dr. Bayer-Zwirello and Midwife Keshishyan did note a Category II fetal heart rate tracing with "some episodes of minimal variability," neither of them expressed concern regarding recurrent Category II fetal heart rate tracings and persistent difficulty performing fetal heart rate monitoring for more than 5 hours since approximately 1 a.m. Ms. Nwagu was assessed with "preterm uterine contractions" at 31 weeks and 4 days. There is no indication in the medical records that Dr. Bayer-Zwirello or Midwife Keshishyan considered Ms. Nwagu's risk of uterine rupture or recurrent placental abruption. Recommendations included admitting to Labor & Delivery, "continuous monitoring," a NICU consult, an anesthesia consult, CBC and T&S laboratory tests, Celestone, and Magnesium.

25.   Fetal heart rate monitoring was initiated at approximately 5:30 a.m., 1 ½ hours after the last fetal heart rate tracing was obtained at Steward Good Samaritan Medical Center and deemed to be Category II. For the next 1 ½ hours, from approximately 5:30 a.m. to 7:00 a.m., there was significant difficulty performing fetal heart rate monitoring and the fetal heart rate was not categorized. During the next hour, from approximately 7:00 a.m. to 8:00 a.m., the defendant, Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.), and the defendant, Luisa Borgonzi, R.N., noted continued difficulty performing fetal heart rate monitoring, with the external fetal monitor being "continually adjusted," and variable decelerations indicative of Category II fetal heart rate tracings on 3 out of 4 checks but expressed no concern. During the 2 ½ hours of fetal heart rate monitoring, Dr. Bayer-Zwirello and Midwife Keshishyan assessed Ms. Nwagu only once, at 6:22 a.m.

26.   At approximately 8:00 a.m., Nurse Borgonzi noted the fetal heart rate first at 200 and then at 70 with prolonged decelerations. Attending physicians were summoned. At approximately 8:10 a.m., a bedside ultrasound showed the fetus as breech, with the head displaced to the left upper quadrant of the abdomen. The fetal heart rate was in the 50-60 range. At 8:12 a.m., Ms. Nwagu arrived at the OR. Caesarian section was performed. The fetus was delivered breech from the upper abdomen. The postoperative diagnosis

was spontaneous uterine rupture during labor with the fetus outside the uterus and fetal bradycardia. The placenta was above the fetal head in the left upper quadrant of the abdomen and "was not attached to any structures." There was a lower uterine defect overlying the prior uterine scar. Ms. Nwagu's infant son, Joseph Nwagu, had Apgars 1, 2, and 4.

27.    Joseph Nwagu developed seizure activity at 1 hour of life, received Phenobarbital, and was transferred to the Massachusetts General Hospital NICU for further treatment. His brain MRI obtained on August 15, 2018 showed a hypoxia-hypoperfusion injury involving the basal ganglia, thalami, and brain stem. Throughout his admission, his neurologic exam was severely abnormal, with no spontaneous respirations and with ventilator dependence. One of the "seasoned caregivers" noted, "This is one of the worst exams I've ever seen." His brain MRI on August 20, 2018 showed areas of restricted diffusion and signal abnormality involving the bilateral lentiform nuclei, thalami, midbrain, posterior pons, and posterior medulla, as well as a small right parieto-occipital extracranial hematoma. The findings were concerning for a central pattern of hypoxic-ischemic changes. His brain MRI on September 27, 2018 showed expected evolution of the hypoxia-hypoperfusion injury resulting in progressive atrophy of the bilateral basal ganglia, thalami, and brainstem. On October 2, 2018, Ms. Nwagu and her husband, Paschal Nwagu, decided to redirect Joseph Nwagu's care to comfort measures only. Joseph Nwagu died on October 8, 2018 due to hypoxic-ischemic encephalopathy.

28.    On August 15, 2018, Ms. Nwagu was at high risk of uterine rupture indicated by her prior caesarian section for placental abruption in August 2017 with a resultant lower uterine scar, a less-than-a-year interval between her prior pregnancy and her current pregnancy, her complaints of constant pain over the caesarian scar, her extremely painful preterm contractions not responding to Terbutaline and Magnesium, and recurrent Category II fetal heart rate tracings. The lower uterine defect and the short interval between Ms. Nwagu's pregnancies substantially increased the probability of uterine rupture. Ms. Nwagu's persistent, increasingly intense uterine contractions increased the risk of uterine rupture even further.

29.    On August 15, 2018, Ms. Nwagu was also at high risk of recurrent placental abruption indicated by her prior placental abruption and caesarian section for the placental abruption in August 2017 with a resultant lower uterine scar, a less-than-a-year interval between her prior pregnancy and her current pregnancy, her complaints of constant pain over the caesarian scar, her extremely painful preterm contractions not responding to Terbutaline and Magnesium, and recurrent Category II fetal heart rate tracings. The lower uterine defect and the short interval between Ms. Nwagu's pregnancies substantially increased the probability of a compromised placental attachment to the uterine wall. Ms. Nwagu's persistent, increasingly intense uterine contractions increased the risk of recurrent placental abruption even further.

30.    The defendants, Anika Moore, M.D., Cassandra Etienne, C.N.M., Lucy Bayer-Zwirello, M.D., and Anna Keshishyan, C.N.M., failed to identify the high risk of uterine rupture and recurrent placental abruption and failed to properly manage the risk by facilitating appropriate workup and timely caesarian delivery.

31. The defendants, Rachel Perakslis, R.N., Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.), and Luisa Borgonzi, R.N., failed to ascertain fetal wellbeing and failed to communicate lack of fetal reassurance to Midwife Etienne, Dr. Bayer-Zwirello, and Midwife Keshishyan, thereby materially increasing the risk of faulty decision-making by the latter with regard to timely caesarian delivery.

32. The defendant, Anika Moore, M.D., deviated from the standard of care of the average qualified obstetrician and gynecologist, taking into account the advances in this profession, with respect to her medical care and treatment of Ms. Nwagu on August 15, 2018 by failing to communicate Ms. Nwagu's history of the prior placental abruption in August 2017 and complaints of pain over the caesarian scar/pelvic pain in July-August of 2018 to Midwife Etienne and by failing to alert Midwife Etienne to Ms. Nwagu's high risk of uterine rupture and recurrent placental abruption when Midwife Etienne solicited Dr. Moore's opinion.

33. The defendant, Cassandra Etienne, C.N.M., deviated as follows from the standard of care of the average qualified labor and delivery midwife, taking into account the advances in this profession, with respect to her medical care and treatment of Ms. Nwagu on August 15, 2018:

(a) by failing to adequately familiarize herself with Ms. Nwagu's medical history, including her prior placental abruption in August 2017 and complaints of pain over the caesarian scar/pelvic pain in July-August of 2018 reflected in Brockton Neighborhood Health Center records, and by improperly attributing her prior caesarian section in August 2017 to "FTP," failure to progress in labor;

(b) by failing to identify Ms. Nwagu's high risk of uterine rupture and recurrent placental abruption in light of her prior caesarian section for placental abruption in August 2017, a less-than-a-year interval between her prior pregnancy and her current pregnancy, her extremely painful preterm contractions not responding to Terbutaline and Magnesium, and recurrent Category II fetal heart rate tracings;

(c) by failing to inquire into the cause of Ms. Nwagu's preterm labor and severe contraction pain and make an appropriate differential diagnosis, including a uterine defect, uterine rupture, and recurrent placental abruption, in light of her prior caesarian section for placental abruption in August 2017, a less-than-a-year interval between her prior pregnancy and her current pregnancy, her extremely painful preterm contractions not responding to Terbutaline and Magnesium, and recurrent Category II fetal heart rate tracings;

(d) by failing to facilitate Ms. Nwagu's timely assessment by a maternal-fetal medicine physician in light of her high-risk labor and by ineffectively treating her with Terbutaline and Magnesium for approximately 4 ½ hours at Steward Good Samaritan Medical Center without an obstetrician's assessment;

(a) by failing to facilitate appropriate workup for a suspected uterine defect, uterine rupture, and recurrent placental abruption, such as a detailed ultrasound with focus on

studies, fetal cell studies such as a Kleihauer-Betke test, and fibrin degradation studies;

(e) by failing to facilitate fetal evaluation by means other than fetal heart rate monitoring, such as a non-stress test, contraction stress test, biophysical profile, modified biophysical profile, or umbilical artery Doppler velocimetry, in light of recurrent non-reassuring (Category II) fetal heart rate tracings and persistent difficulty performing fetal heart rate monitoring; and

(f) by failing to facilitate timely caesarian delivery in the context of a probable uterine rupture and recurrent placental abruption, recurrent non-reassuring (Category II) fetal heart rate tracings, and persistent difficulty performing fetal heart rate monitoring.

35. The defendants, Rachel Perakslis, R.N., Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.), and Luisa Borgonzi, R.N., deviated as follows from the standard of care of the average qualified labor and delivery nurse, taking into account the advances in this profession, with respect to their medical care and treatment of Ms. Nwagu on August 15, 2018:

(a) by failing to properly perform fetal heart rate monitoring as evidenced by persistent difficulty performing the monitoring and by failing to alert Midwife Etienne, Dr. Bayer-Zwirello, and Midwife Keshishyan to recurrent non-reassuring (Category II) fetal heart rate tracings and persistent difficulty performing the monitoring and

(b) by failing to facilitate fetal evaluation by means other than fetal heart rate monitoring, such as a non-stress test, contraction stress test, biophysical profile, modified biophysical profile, or umbilical artery Doppler velocimetry, in light of recurrent non-reassuring (Category II) fetal heart rate tracings and persistent difficulty performing fetal heart rate monitoring.

36. The above described deviations from the standards of care materially increased Joseph Nwagu's risk of hypoxic injury. This risk materialized when Dr. Moore, Midwife Etienne, Dr. Bayer-Zwirello, and Midwife Keshishyan failed to facilitate timely caesarian delivery in the context of a probable uterine rupture and recurrent placental abruption, recurrent non-reassuring (Category II) fetal heart rate tracings, and difficulty performing fetal heart rate monitoring.

37. As a direct and proximate result of the above negligence and medical malpractice on the part of the defendants, Anika Moore, M.D., Cassandra Etienne, C.N.M., Rachel Perakslis, R.N., Lucy Bayer-Zwirello, M.D., Anna Keshishyan, C.N.M., Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.), and Luisa Borgonzi, R.N., Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

38. At all relevant times, the defendant, Anika Moore, M.D., was affiliated with Steward Good Samaritan Medical Center and was the attending/on-call physician relative to Ms. Nwagu's admission to Steward Good Samaritan Medical Center on August 15, 2018.

39.  At all relevant times, the defendants, Anika Moore, M.D., Cassandra Etienne, C.N.M., and Rachel Perakslis, R.N., were agents and/or employees of the defendant, Steward Good Samaritan Medical Center, Inc., acting in the course of their employment.  The defendant, Steward Good Samaritan Medical Center, Inc., is vicariously liable for the above negligence and medical malpractice on the part of its agents and/or employees in the course of their employment.

40.  At all relevant times, the defendants, Lucy Bayer-Zwirello, M.D., Anna Keshishyan, C.N.M., Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.), and Luisa Borgonzi, R.N., were agents and/or employees of the defendant, Steward St. Elizabeth's Medical Center of Boston, Inc., acting in the course of their employment.  The defendant, Steward St. Elizabeth's Medical Center of Boston, Inc., is vicariously liable for the above negligence and medical malpractice on the part of its agents and/or employees in the course of their employment.

41.  The plaintiffs have complied with the provisions of M.G.L. c. 231, §60L by giving a written notice of their intent to file a claim to the defendants.

## Count I
### (Negligent Wrongful Death against Anika Moore, M.D.)

42.  The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

43.  Dr. Moore's above conduct constituted negligence and medical malpractice.

44.  As a direct and proximate result of the negligence and medical malpractice on the part of Dr. Moore, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

45.  Dr. Moore's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Anika Moore, M.D., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

## Count II
### (Grossly Negligent Wrongful Death against Anika Moore, M.D.)

46.  The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

47.  Dr. Moore's above conduct was malicious, willful, wanton, reckless, or grossly negligent.

48.  As a direct and proximate result of the malicious, willful, wanton, reckless, or grossly negligent conduct on the part of Dr. Moore, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

49.   Dr. Moore's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Anika Moore, M.D., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, including punitive damages, together with interest and costs.

## Count III
### (Conscious Pain and Suffering against Anika Moore, M.D.)

50.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

51.   As a direct and proximate result of the above negligence and medical malpractice on the part of Dr. Moore, Joseph Nwagu was caused to suffer consciously from the time of his birth until his death.

52.   Dr. Moore's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Anika Moore, M.D., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

## Count IV
### (Loss of Consortium by Paschal Nwagu against Anika Moore, M.D.)

53.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

54.   As a direct and proximate result of the above negligence and medical malpractice on the part of Dr. Moore, Paschal Nwagu has suffered the loss of his son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Anika Moore, M.D., for damages, together with interest and costs.

## Count V
### (Loss of Consortium by Stella Nwagu against Anika Moore, M.D.)

55.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

56.   As a direct and proximate result of the above negligence and medical malpractice on the part of Dr. Moore, Stella Nwagu has suffered the loss of her son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Cassandra Etienne, C.N.M., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

## Count IX
### (Grossly Negligent Wrongful Death against Cassandra Etienne, C.N.M.)

65.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

66.   Midwife Etienne's above conduct was malicious, willful, wanton, reckless, or grossly negligent.

67.   As a direct and proximate result of the malicious, willful, wanton, reckless, or grossly negligent conduct on the part of Midwife Etienne, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

68.   Midwife Etienne's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Cassandra Etienne, C.N.M., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, including punitive damages, together with interest and costs.

## Count X
### (Conscious Pain and Suffering against Cassandra Etienne, C.N.M.)

69.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

70.   As a direct and proximate result of the above negligence and medical malpractice on the part of Midwife Etienne, Joseph Nwagu was caused to suffer consciously from the time of his birth until his death.

71.   Midwife Etienne's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Cassandra Etienne, C.N.M., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

### Count XI
### (Loss of Consortium by Paschal Nwagu against Cassandra Etienne, C.N.M.)

72.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

73.   As a direct and proximate result of the above negligence and medical malpractice on the part of Midwife Etienne, Paschal Nwagu has suffered the loss of his son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Cassandra Etienne, C.N.M., for damages, together with interest and costs.

### Count XII
### (Loss of Consortium by Stella Nwagu against Cassandra Etienne, C.N.M.)

74.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

75.   As a direct and proximate result of the above negligence and medical malpractice on the part of Midwife Etienne, Stella Nwagu has suffered the loss of her son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Cassandra Etienne, C.N.M., for damages, together with interest and costs.

### Count XIII
### (Negligent Infliction of Emotional Distress on Paschal Nwagu against Cassandra Etienne, C.N.M.)

76.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

77.   As a direct and proximate result of the above negligence and medical malpractice on the part of Midwife Etienne, Paschal Nwagu has suffered severe emotional distress, with physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of his son, Joseph Nwagu.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Cassandra Etienne, C.N.M., for damages, together with interest and costs.

### Count XIV
### (Negligent Infliction of Emotional Distress on Stella Nwagu against Cassandra Etienne, C.N.M.)

78.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

79.   As a direct and proximate result of the above negligence and medical malpractice on the part of Midwife Etienne, Stella Nwagu has suffered severe emotional distress, with physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of her son, Joseph Nwagu.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Cassandra Etienne, C.N.M., for damages, together with interest and costs.

## Count XV
### (Negligent Wrongful Death against Rachel Perakslis, R.N.)

80.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

81.   Nurse Perakslis's above conduct constituted negligence and medical malpractice.

82.   As a direct and proximate result of the negligence and medical malpractice on the part of Nurse Perakslis, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

83.   Nurse Perakslis's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Rachel Perakslis, R.N., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

## Count XVI
### (Grossly Negligent Wrongful Death against Rachel Perakslis, R.N.)

84.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

85.   Nurse Perakslis's above conduct was malicious, willful, wanton, reckless, or grossly negligent.

86.   As a direct and proximate result of the malicious, willful, wanton, reckless, or grossly negligent conduct on the part of Nurse Perakslis, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

87.   Nurse Perakslis's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Rachel Perakslis, R.N., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, including punitive damages, together with interest and costs.

## Count XVII
### (Conscious Pain and Suffering against Rachel Perakslis, R.N.)

88.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

89.   As a direct and proximate result of the above negligence and medical malpractice on the part of Nurse Perakslis, Joseph Nwagu was caused to suffer consciously from the time of his birth until his death.

90.   Nurse Perakslis's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Rachel Perakslis, R.N., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

## Count XVIII
### (Loss of Consortium by Paschal Nwagu against Rachel Perakslis, R.N.)

91.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

92.   As a direct and proximate result of the above negligence and medical malpractice on the part of Nurse Perakslis, Paschal Nwagu has suffered the loss of his son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Rachel Perakslis, R.N., for damages, together with interest and costs.

## Count XIX
### (Loss of Consortium by Stella Nwagu against Rachel Perakslis, R.N.)

93.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

94.   As a direct and proximate result of the above negligence and medical malpractice on the part of Nurse Perakslis, Stella Nwagu has suffered the loss of her son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Rachel Perakslis, R.N., for damages, together with interest and costs.

## Count XX
### (Negligent Infliction of Emotional Distress on Paschal Nwagu against Rachel Perakslis, R.N.)

95.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

96.   As a direct and proximate result of the above negligence and medical malpractice on the part of Nurse Perakslis, Paschal Nwagu has suffered severe emotional distress, with physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of his son, Joseph Nwagu.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Rachel Perakslis, R.N., for damages, together with interest and costs.

## Count XXI
### (Negligent Infliction of Emotional Distress on Stella Nwagu against Rachel Perakslis, R.N.)

97.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

98.   As a direct and proximate result of the above negligence and medical malpractice on the part of Nurse Perakslis, Stella Nwagu has suffered severe emotional distress, with physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of her son, Joseph Nwagu.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Rachel Perakslis, R.N., for damages, together with interest and costs.

## Count XXII
### (Negligent Wrongful Death against Lucy Bayer-Zwirello, M.D.)

99.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

100.   Dr. Bayer-Zwirello's above conduct constituted negligence and medical malpractice.

101.   As a direct and proximate result of the negligence and medical malpractice on the part of Dr. Bayer-Zwirello, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

102.   Dr. Bayer-Zwirello's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Lucy Bayer-Zwirello, M.D., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

## Count XXIII
### (Grossly Negligent Wrongful Death against Lucy Bayer-Zwirello, M.D.)

103. The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

104. Dr. Bayer-Zwirello's above conduct was malicious, willful, wanton, reckless, or grossly negligent.

105. As a direct and proximate result of the malicious, willful, wanton, reckless, or grossly negligent conduct on the part of Dr. Bayer-Zwirello, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

106. Dr. Bayer-Zwirello's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Lucy Bayer-Zwirello, M.D., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, including punitive damages, together with interest and costs.

## Count XXIV
### (Conscious Pain and Suffering against Lucy Bayer-Zwirello, M.D.)

107. The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

108. As a direct and proximate result of the above negligence and medical malpractice on the part of Dr. Bayer-Zwirello, Joseph Nwagu was caused to suffer consciously from the time of his birth until his death.

109. Dr. Bayer-Zwirello's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Lucy Bayer-Zwirello, M.D., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

## Count XXV
### (Loss of Consortium by Paschal Nwagu against Lucy Bayer-Zwirello, M.D.)

110. The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

111. As a direct and proximate result of the above negligence and medical malpractice on the part of Dr. Bayer-Zwirello, Paschal Nwagu has suffered the loss of his son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Lucy Bayer-Zwirello, M.D., for damages, together with interest and costs.

## Count XXVI
### (Loss of Consortium by Stella Nwagu against Lucy Bayer-Zwirello, M.D.)

112.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

113.   As a direct and proximate result of the above negligence and medical malpractice on the part of Dr. Bayer-Zwirello, Stella Nwagu has suffered the loss of her son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Lucy Bayer-Zwirello, M.D., for damages, together with interest and costs.

## Count XXVII
### (Negligent Infliction of Emotional Distress on Paschal Nwagu against Lucy Bayer-Zwirello, M.D.)

114.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

115.   As a direct and proximate result of the above negligence and medical malpractice on the part of Dr. Bayer-Zwirello, Paschal Nwagu has suffered severe emotional distress, with physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of his son, Joseph Nwagu.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Lucy Bayer-Zwirello, M.D., for damages, together with interest and costs.

## Count XXVIII
### (Negligent Infliction of Emotional Distress on Stella Nwagu against Lucy Bayer-Zwirello, M.D.)

116.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

117.   As a direct and proximate result of the above negligence and medical malpractice on the part of Dr. Bayer-Zwirello, Stella Nwagu has suffered severe emotional distress, with physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of her son, Joseph Nwagu.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Lucy Bayer-Zwirello, M.D., for damages, together with interest and costs.

## Count XXIX
### (Negligent Wrongful Death against Anna Keshishyan, C.N.M.)

118.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

119.   Midwife Keshishyan's above conduct constituted negligence and medical malpractice.

120.   As a direct and proximate result of the negligence and medical malpractice on the part of Midwife Keshishyan, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

121.   Midwife Keshishyan's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Anna Keshishyan, C.N.M., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

## Count XXX
### (Grossly Negligent Wrongful Death against Anna Keshishyan, C.N.M.)

122.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

123.   Midwife Keshishyan's above conduct was malicious, willful, wanton, reckless, or grossly negligent.

124.   As a direct and proximate result of the malicious, willful, wanton, reckless, or grossly negligent conduct on the part of Midwife Keshishyan, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

125.   Midwife Keshishyan's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Anna Keshishyan, C.N.M., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, including punitive damages, together with interest and costs.

## Count XXXI
### (Conscious Pain and Suffering against Anna Keshishyan, C.N.M.)

126.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

127.   As a direct and proximate result of the above negligence and medical malpractice on the part of Midwife Keshishyan, Joseph Nwagu was caused to suffer consciously from the time of his birth until his death.

128.   Midwife Keshishyan's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Anna Keshishyan, C.N.M., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

## Count XXXII
### (Loss of Consortium by Paschal Nwagu against Anna Keshishyan, C.N.M.)

129.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

130.   As a direct and proximate result of the above negligence and medical malpractice on the part of Midwife Keshishyan, Paschal Nwagu has suffered the loss of his son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Anna Keshishyan, C.N.M., for damages, together with interest and costs.

## Count XXXIII
### (Loss of Consortium by Stella Nwagu against Anna Keshishyan, C.N.M.)

131.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

132.   As a direct and proximate result of the above negligence and medical malpractice on the part of Midwife Keshishyan, Stella Nwagu has suffered the loss of her son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Anna Keshishyan, C.N.M., for damages, together with interest and costs.

## Count XXXIV
### (Negligent Infliction of Emotional Distress on Paschal Nwagu against Anna Keshishyan, C.N.M.)

133.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

134.   As a direct and proximate result of the above negligence and medical malpractice on the part of Midwife Keshishyan, Paschal Nwagu has suffered severe emotional distress, with

physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of his son, Joseph Nwagu.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Anna Keshishyan, C.N.M., for damages, together with interest and costs.

## Count XXXV
### (Negligent Infliction of Emotional Distress on Stella Nwagu against Anna Keshishyan, C.N.M.)

135.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

136.   As a direct and proximate result of the above negligence and medical malpractice on the part of Midwife Keshishyan, Stella Nwagu has suffered severe emotional distress, with physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of her son, Joseph Nwagu.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Anna Keshishyan, C.N.M., for damages, together with interest and costs.

## Count XXXVI
### (Negligent Wrongful Death against Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.))

137.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

138.   Nurse Doherty's above conduct constituted negligence and medical malpractice.

139.   As a direct and proximate result of the negligence and medical malpractice on the part of Nurse Doherty, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

140.   Nurse Doherty's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.), for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

## Count XXXVII
### (Grossly Negligent Wrongful Death against Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.))

141.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

142.   Nurse Doherty's above conduct was malicious, willful, wanton, reckless, or grossly negligent.

143.   As a direct and proximate result of the malicious, willful, wanton, reckless, or grossly negligent conduct on the part of Nurse Doherty, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

144.   Nurse Doherty's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.), for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, including punitive damages, together with interest and costs.

## Count XXXVIII
### (Conscious Pain and Suffering against Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.))

145.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

146.   As a direct and proximate result of the above negligence and medical malpractice on the part of Nurse Doherty, Joseph Nwagu was caused to suffer consciously from the time of his birth until his death.

147.   Nurse Doherty's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.), for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

## Count XXXIX
### (Loss of Consortium by Paschal Nwagu against Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.))

148.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

149.   As a direct and proximate result of the above negligence and medical malpractice on the part of Nurse Doherty, Paschal Nwagu has suffered the loss of his son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.), for damages, together with interest and costs.

### Count XL
### (Loss of Consortium by Stella Nwagu against Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.))

150.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

151.   As a direct and proximate result of the above negligence and medical malpractice on the part of Nurse Doherty, Stella Nwagu has suffered the loss of her son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.), for damages, together with interest and costs.

### Count XLI
### (Negligent Infliction of Emotional Distress on Paschal Nwagu against Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.))

152.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

153.   As a direct and proximate result of the above negligence and medical malpractice on the part of Nurse Doherty, Paschal Nwagu has suffered severe emotional distress, with physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of his son, Joseph Nwagu.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.), for damages, together with interest and costs.

### Count XLII
### (Negligent Infliction of Emotional Distress on Stella Nwagu against Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.))

154.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

155.   As a direct and proximate result of the above negligence and medical malpractice on the part of Nurse Doherty, Stella Nwagu has suffered severe emotional distress, with physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of her son, Joseph Nwagu.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Katrina Doherty, R.N. (formerly known as Katrina Martin, B.S.N.), for damages, together with interest and costs.

## Count XLIII
### (Negligent Wrongful Death against Luisa Borgonzi, R.N.)

156.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

157.   Nurse Borgonzi's above conduct constituted negligence and medical malpractice.

158.   As a direct and proximate result of the negligence and medical malpractice on the part of Nurse Borgonzi, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

159.   Nurse Borgonzi's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Luisa Borgonzi, R.N., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

## Count XLIV
### (Grossly Negligent Wrongful Death against Luisa Borgonzi, R.N.)

160.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

161.   Nurse Borgonzi's above conduct was malicious, willful, wanton, reckless, or grossly negligent.

162.   As a direct and proximate result of the malicious, willful, wanton, reckless, or grossly negligent conduct on the part of Nurse Borgonzi, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

163.   Nurse Borgonzi's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Luisa Borgonzi, R.N., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, including punitive damages, together with interest and costs.

## Count XLV
### (Conscious Pain and Suffering against Luisa Borgonzi, R.N.)

164.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

165.   As a direct and proximate result of the above negligence and medical malpractice on the part of Nurse Borgonzi, Joseph Nwagu was caused to suffer consciously from the time of his birth until his death.

166. Nurse Borgonzi's conduct caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Luisa Borgonzi, R.N., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

## Count XLVI
### (Loss of Consortium by Paschal Nwagu against Luisa Borgonzi, R.N.)

167. The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

168. As a direct and proximate result of the above negligence and medical malpractice on the part of Nurse Borgonzi, Paschal Nwagu has suffered the loss of his son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Luisa Borgonzi, R.N., for damages, together with interest and costs.

## Count XLVII
### (Loss of Consortium by Stella Nwagu against Luisa Borgonzi, R.N.)

169. The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

170. As a direct and proximate result of the above negligence and medical malpractice on the part of Nurse Borgonzi, Stella Nwagu has suffered the loss of her son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Luisa Borgonzi, R.N., for damages, together with interest and costs.

## Count XLVIII
### (Negligent Infliction of Emotional Distress on Paschal Nwagu against Luisa Borgonzi, R.N.)

171. The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

172. As a direct and proximate result of the above negligence and medical malpractice on the part of Nurse Borgonzi, Paschal Nwagu has suffered severe emotional distress, with physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of his son, Joseph Nwagu.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Luisa Borgonzi, R.N., for damages, together with interest and costs.

### Count XLIX
### (Negligent Infliction of Emotional Distress on Stella Nwagu against Luisa Borgonzi, R.N.)

173.  The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

174.  As a direct and proximate result of the above negligence and medical malpractice on the part of Nurse Borgonzi, Stella Nwagu has suffered severe emotional distress, with physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of her son, Joseph Nwagu.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Luisa Borgonzi, R.N., for damages, together with interest and costs.

### Count L
### (Negligent Wrongful Death against Steward Good Samaritan Medical Center, Inc.)

175.  The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

176.  Steward Good Samaritan Medical Center, Inc. is vicariously liable for the above negligence and medical malpractice on the part of its agents and/or employees, including Dr. Moore, Midwife Etienne, and Nurse Perakslis.

177.  As a direct and proximate result of the negligence and medical malpractice on the part of Steward Good Samaritan Medical Center, Inc., by its agents and/or employees, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

178.  Steward Good Samaritan Medical Center, Inc.'s conduct, by its agents and/or employees, caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Steward Good Samaritan Medical Center, Inc., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

### Count LI
### (Grossly Negligent Wrongful Death against Steward Good Samaritan Medical Center, Inc.)

179.  The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

180.  Steward Good Samaritan Medical Center, Inc. is vicariously liable for the above malicious, willful, wanton, reckless, or grossly negligent conduct on the part of its agents and/or employees, including Dr. Moore, Midwife Etienne, and Nurse Perakslis.

181. As a direct and proximate result of the malicious, willful, wanton, reckless, or grossly negligent conduct on the part of Steward Good Samaritan Medical Center, Inc., by its agents and/or employees, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

182. Steward Good Samaritan Medical Center, Inc.'s conduct, by its agents and/or employees, caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Steward Good Samaritan Medical Center, Inc., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, including punitive damages, together with interest and costs.

### Count LII
### (Conscious Pain and Suffering against Steward Good Samaritan Medical Center, Inc.)

183. The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

184. As a direct and proximate result of the above negligence and medical malpractice on the part of Steward Good Samaritan Medical Center, Inc., by its agents and/or employees, Joseph Nwagu was caused to suffer consciously from the time of his birth until his death.

185. Steward Good Samaritan Medical Center, Inc.'s conduct, by its agents and/or employees, caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Steward Good Samaritan Medical Center, Inc., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

### Count LIII
### (Loss of Consortium by Paschal Nwagu against Steward Good Samaritan Medical Center, Inc.)

186. The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

187. As a direct and proximate result of the above negligence and medical malpractice on the part of Steward Good Samaritan Medical Center, Inc., by its agents and/or employees, Paschal Nwagu has suffered the loss of his son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Steward Good Samaritan Medical Center, Inc., for damages, together with interest and costs.

## Count LIV
### (Loss of Consortium by Stella Nwagu against Steward Good Samaritan Medical Center, Inc.)

188.  The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

189.  As a direct and proximate result of the above negligence and medical malpractice on the part of Steward Good Samaritan Medical Center, Inc., by its agents and/or employees, Stella Nwagu has suffered the loss of her son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Steward Good Samaritan Medical Center, Inc., for damages, together with interest and costs.

## Count LV
### (Negligent Infliction of Emotional Distress on Paschal Nwagu against Steward Good Samaritan Medical Center, Inc.)

190.  The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

191.  As a direct and proximate result of the above negligence and medical malpractice on the part of Steward Good Samaritan Medical Center, Inc., by its agents and/or employees, Paschal Nwagu has suffered severe emotional distress, with physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of his son, Joseph Nwagu.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Steward Good Samaritan Medical Center, Inc., for damages, together with interest and costs.

## Count LVI
### (Negligent Infliction of Emotional Distress on Stella Nwagu against Steward Good Samaritan Medical Center, Inc.)

192.  The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

193.  As a direct and proximate result of the above negligence and medical malpractice on the part of Steward Good Samaritan Medical Center, Inc., by its agents and/or employees, Stella Nwagu has suffered severe emotional distress, with physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of her son, Joseph Nwagu.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Steward Good Samaritan Medical Center, Inc., for damages, together with interest and costs.

### Count LVII
**(Negligent Wrongful Death against Steward St. Elizabeth's Medical Center of Boston, Inc.)**

194.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

195.   Steward St. Elizabeth's Medical Center of Boston, Inc. is vicariously liable for the above negligence and medical malpractice on the part of its agents and/or employees, including Dr. Bayer-Zwirello, Midwife Keshishyan, Nurse Doherty, and Nurse Borgonzi.

196.   As a direct and proximate result of the negligence and medical malpractice on the part of Steward St. Elizabeth's Medical Center of Boston, Inc., by its agents and/or employees, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

197.   Steward St. Elizabeth's Medical Center of Boston, Inc.'s conduct, by its agents and/or employees, caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

   WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Steward St. Elizabeth's Medical Center of Boston, Inc., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

### Count LVIII
**(Grossly Negligent Wrongful Death against Steward St. Elizabeth's Medical Center of Boston, Inc.)**

198.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

199.   Steward St. Elizabeth's Medical Center of Boston, Inc. is vicariously liable for the above malicious, willful, wanton, reckless, or grossly negligent conduct on the part of its agents and/or employees, including Dr. Bayer-Zwirello, Midwife Keshishyan, Nurse Doherty, and Nurse Borgonzi.

200.   As a direct and proximate result of the malicious, willful, wanton, reckless, or grossly negligent conduct on the part of Steward St. Elizabeth's Medical Center of Boston, Inc., by its agents and/or employees, Joseph Nwagu suffered fatal hypoxia-hypoperfusion injury and died.

201.   Steward St. Elizabeth's Medical Center of Boston, Inc.'s conduct, by its agents and/or employees, caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

   WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Steward St. Elizabeth's Medical Center of Boston, Inc., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, including punitive damages, together with interest and costs.

### Count LIX
**(Conscious Pain and Suffering against Steward St. Elizabeth's Medical Center of Boston, Inc.)**

202.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

203.   As a direct and proximate result of the above negligence and medical malpractice on the part of Steward St. Elizabeth's Medical Center of Boston, Inc., by its agents and/or employees, Joseph Nwagu was caused to suffer consciously from the time of his birth until his death.

204.   Steward St. Elizabeth's Medical Center of Boston, Inc.'s conduct, by its agents and/or employees, caused Joseph Nwagu's wrongful death in violation of M.G.L. c. 229, §2.

WHEREFORE, the plaintiff, Paschal Nwagu, as the Personal Representative of the Estate of Joseph Nwagu, demands judgment against the defendant, Steward St. Elizabeth's Medical Center of Boston, Inc., for Joseph Nwagu's wrongful death and damages under M.G.L. c. 229, §2, together with interest and costs.

### Count LX
**(Loss of Consortium by Paschal Nwagu against Steward St. Elizabeth's Medical Center of Boston, Inc.)**

205.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

206.   As a direct and proximate result of the above negligence and medical malpractice on the part of Steward St. Elizabeth's Medical Center of Boston, Inc., by its agents and/or employees, Paschal Nwagu has suffered the loss of his son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Steward St. Elizabeth's Medical Center of Boston, Inc., for damages, together with interest and costs.

### Count LXI
**(Loss of Consortium by Stella Nwagu against Steward St. Elizabeth's Medical Center of Boston, Inc.)**

207.   The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

208.   As a direct and proximate result of the above negligence and medical malpractice on the part of Steward St. Elizabeth's Medical Center of Boston, Inc., by its agents and/or employees, Stella Nwagu has suffered the loss of her son, Joseph Nwagu's consortium.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Steward St. Elizabeth's Medical Center of Boston, Inc., for damages, together with interest and costs.

## Count LXII
### (Negligent Infliction of Emotional Distress on Paschal Nwagu against Steward St. Elizabeth's Medical Center of Boston, Inc.)

209. The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

210. As a direct and proximate result of the above negligence and medical malpractice on the part of Steward St. Elizabeth's Medical Center of Boston, Inc., by its agents and/or employees, Paschal Nwagu has suffered severe emotional distress, with physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of his son, Joseph Nwagu.

WHEREFORE, the plaintiff, Paschal Nwagu, individually, demands judgment against the defendant, Steward St. Elizabeth's Medical Center of Boston, Inc., for damages, together with interest and costs.

## Count LXIII
### (Negligent Infliction of Emotional Distress on Stella Nwagu against Steward St. Elizabeth's Medical Center of Boston, Inc.)

211. The plaintiffs repeat and incorporate herein the allegations contained in the previous paragraphs of this Complaint.

212. As a direct and proximate result of the above negligence and medical malpractice on the part of Steward St. Elizabeth's Medical Center of Boston, Inc., by its agents and/or employees, Stella Nwagu has suffered severe emotional distress, with physical harm manifested by objective symptomatology, arising from the wrongful death, pain, and suffering of her son, Joseph Nwagu.

WHEREFORE, the plaintiff, Stella Nwagu, demands judgment against the defendant, Steward St. Elizabeth's Medical Center of Boston, Inc., for damages, together with interest and costs.

**THE PLAINTIFFS DEMAND A TRIAL BY JURY AS TO ALL ISSUES.**

Respectfully submitted,
Plaintiffs, Paschal Nwagu, as the Personal
Representative of the Estate of Joseph Nwagu and
Individually, and Stella Nwagu,
By Their Attorneys,

Paul E. Mitchell, B.B.O. #550491
pmitchell@mitchelldesimone.com
Galina I. Razumovsky, B.B.O. #692588
grazumovsky@mitchelldesimone.com
Mitchell & DeSimone
101 Arch Street
Boston, MA 02110
(617) 737-8300

Dated: 6.8.20 _____2020

2

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>20-1158G | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| | | |
|---|---|---|
| **PLAINTIFF(S):** PASCHAL NWAGU, as Personal Representative of the ESTATE | | **COUNTY** Suffolk |
| **ADDRESS:** of JOSEPH NWAGU and Individually, and STELLA NWAGU | | |
| 25 Eagle Avenue, Apt. 12, Brockton, MA 02301 | **DEFENDANT(S):** Anika Moore, M.D., Cassandra Etienne, C.N.M., Rachel Perakslis, R.N., |
| | Lucy Bayer-Zwirello, M.D., Anna Keshishyan, C.N.M., Katrina Doherty, R.N., Luisa Borgonzi, R.N., |
| **ATTORNEY:** PAUL E. MITCHELL | Steward Good Samaritan Medical Center, Inc., Steward St. Elizabeth's Medical Center of Boston, In |
| **ADDRESS:** MITCHELL & DESIMONE, 101 Arch Street, Boston, MA 02110 | **ADDRESS:** Brockton Neighborhood Health Center, 63 Main Street, Brockton, MA 02301. |
| | Steward Good Samaritan Medical Center, 235 North Pearl Street, Brockton, MA 02301, |
| | Steward St. Elizabeth's Medical Center of Boston, 736 Cambridge Street, Brighton, MA 02135 |
| **BBO:** 550491 | |

**TYPE OF ACTION AND TRACK DESIGNATION** (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B06 | Malpractice – Medical | A | ☒ YES   ☐ NO |

*"If "Other" please describe:*

Is there a claim under G.L. c. 93A?   ☐ YES   ☒ NO                Is this a class action under Mass. R. Civ. P. 23?   ☐ YES   ☒ NO

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ............................................................... $75,000
2. Total doctor expenses .................................................................. $
3. Total chiropractic expenses ......................................................... $
4. Total physical therapy expenses .................................................. $
5. Total other expenses (describe below) ......................................... $
                                                Subtotal (A): $
B. Documented lost wages and compensation to date ......................................................... $ Unknown
C. Documented property damages to date ......................................................................... $
D. Reasonably anticipated future medical and hospital expenses ......................................... $
E. Reasonably anticipated lost wages ............................................................................... $
F. Other documented items of damages (describe below) ................................................... $

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
fatal hypoxia-hypoperfusion injury and death of Joseph Nwagu

severe emotional distress of Stella Nwagu and Paschal Nwagu

                                                        TOTAL (A-F): $75,000

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

                                                        TOTAL: $

**Signature of Attorney/ Unrepresented Plaintiff:** X                            **Date:**

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record:** X                            **Date:** 6.1-20

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2084CV01158 Ⓐ | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Paschal Nwagu personal Representative of the Estate of Joseph Nwagu et al vs. Moore, M.D., Anika et al | Michael Joseph Donovan, Clerk of Court |
|---|---|

| TO: | COURT NAME & ADDRESS Suffolk County Superior Court - Civil Suffolk County Courthouse, 12th Floor Three Pemberton Square Boston, MA 02108 |
|---|---|

### TRACKING ORDER - A - Average

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**          **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 09/01/2020 | |
| Response to the complaint filed (also see MRCP 12) | | 10/01/2020 | |
| All motions under MRCP 12, 19, and 20 | 10/01/2020 | 11/02/2020 | 11/30/2020 |
| All motions under MRCP 15 | 07/28/2021 | 08/27/2021 | 08/27/2021 |
| All discovery requests **and depositions** served and non-expert depositions completed | 05/24/2022 | | |
| All motions under MRCP 56 | 06/23/2022 | 07/25/2022 | |
| Final pre-trial conference held and/or firm trial date set | | | 11/21/2022 |
| Case shall be resolved and judgment shall issue by | | | 06/05/2023 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 06/03/2020 | ASSISTANT CLERK Timothy C Walsh | PHONE (617)788-8121 |
|---|---|---|